IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:14-CV-778-JG

| | | |
|---|---|---|
| UNITED STATES OF AMERICA FOR THE USE AND BENEFIT OF HENDRICKSON MECHANICAL SERVICES, INC., | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | **ORDER** |
| TYLER CONSTRUCTION GROUP, INC. and LIBERTY MUTUAL INSURANCE COMPANY, | ) ) ) ) | |
| Defendants. | ) | |

This case comes before the court on the motion for summary judgment, pursuant to Fed. R. Civ. P. 56, by plaintiff United States of America for the use and benefit of Hendrickson Mechanical Services, Inc.[1] ("Hendrickson") (D.E. 19). Both defendants, Tyler Construction Group, Inc. ("Tyler") and Liberty Mutual Insurance Company ("Liberty Mutual"), oppose the motion. On 26 January 2015, the case was referred to magistrate judge jurisdiction by consent of the parties (D.E. 15), pursuant to 28 U.S.C. § 636(c)(1), and subsequently reassigned to the undersigned magistrate judge (D.E. 16). The motion has been briefed and is ripe for adjudication. For the reasons set forth below, the motion will be denied and this case will be referred to a mediated settlement conference.

---

[1] Because Hendrickson has asserted a claim pursuant to the Miller Act, 40 U.S.C. §§ 3131, *et seq.*, the United States is identified as the named plaintiff for the use and benefit of Hendrickson. *See* 40 U.S.C. § 3133(c)(3)(A) ("A civil action brought under this subsection must be brought—(A) in the name of the United States for the use of the person bringing the action.").

# BACKGROUND

## I. FACTUAL BACKGROUND

This case arises out of the construction of the Transient Student Barracks ("Barracks") on the Fort Bragg, North Carolina campus. Construction of the Barracks was part of a project that also included construction of a Fire Brigade Company Operations Facility and was overseen by the United States Army Corps of Engineers. Notice to Proceed (D.E. 19-1) 1. Tyler served as the general contractor for the construction of both buildings, Liberty Mutual issued a payment bond on the project, and Hendrickson was a subcontractor enlisted to provide labor and materials for the mechanical scope of the Barracks. Subcontract (D.E. 19-4) art. 1. Hendrickson and Tyler executed the subcontract on 5 March 2012. Subcontract 34. Hendrickson was scheduled to complete performance by 28 February 2013. Initial Schedule (D.E. 19-5) 1. The subcontract set Hendrickson's compensation at $1,611,933.00, subject to additions and deductions provided for under the subcontract. Subcontract art. 6(a).[2]

Hendrickson began work on the site on 25 July 2012. 25 July 2012 Daily Log (D.E. 21-1) 1. Hendrickson was to be paid monthly per the subcontract, ¶ 8.2.6, though the subcontract provided for the assessment by Tyler of liquidated damages arising from delay, ¶ 5.5.[3] A number of delays occurred in the construction of both buildings, and the project fell behind schedule. Charles Tyler Dep. (D.E. 19-1) 23:23 to 24:2. In January of 2013, the Army Corps of Engineers began assessing liquidated damages against Tyler as a result of the delays. Tyler Dep. 62:3-11. Tyler paid Hendrickson only $25,000.00 of the $47,978.00 charged in its 30 September

---

[2] Change orders brought the total to $1,799,267.00. Payment App. (D.E. 19-6).

[3] Paragraph 5.5 of the subcontract provides: "If the Subcontract Documents furnished to the Subcontractor in accordance with Paragraph 2.3 provide for liquidated damages or other damages for delay beyond the completion date set forth in the Subcontract Documents that are not specifically addressed as a liquidated damage item in this Agreement, and such damages are assessed, the Tyler Construction Group may assess a share of the damages against the Subcontractor in proportion to the Subcontractor's share of the responsibility for the damages. However, the amount of such assessment shall not exceed the amount assessed against the Tyler Construction Group."

2013 billing. Sum. of Billings and Payments (D.E. 19-19). Hendrickson first received notice in December 2013 of any deficiency alleged by Tyler for the work it performed. Tyler Dep. 111:20 to 113:14. Hendrickson received no payment for its 21 February 2014 billing of $11,478.00. Sum. of Billings and Payments. In total, Hendrickson contends that it is still owed $34,456.00 for its work on the Barracks. Sum. of Billings and Payments. On 6 January 2014, the project was deemed complete and accepted for occupancy. 28 Feb. 2014 Ltr. from Army Corps of Engs. (D.E. 19-18) 1 ¶ 1.h.

Zach Clayton, a scheduling and constructability analyst with Milestone Group, Ltd., was enlisted by Tyler to analyze the schedule for completion of the project and perform an assessment of responsibility for the delays on the project. Tyler Dep. 27:7-19; 40:12-19. Clayton prepared a number of status reports during the construction of the project as well as overall assessments following its completion. For example, Clayton's 24 November 2012 report noted that the Barracks project was 89 days behind schedule at that point. 24 Nov. 2012 Rep. (D.E. 19-8) 1. The report prepared by Clayton on 23 May 2013 estimated that the Barracks project was 124 calendar days behind schedule. 23 May 2013 Rep. (D.E. 19-13) 1. By 21 June 2013, Clayton estimated that completion of the Barracks was 147 calendar days behind schedule. 21 June 2013 Rep. (D.E. 19-14) 1. In his 25 July 2013 report, Clayton projected that completion of the Barracks was 177 calendar days behind schedule. 25 July 2013 Rep. (D.E. 19-15) 1. By 27 August 2013, Clayton estimated that the delay had decreased to 161 calendar days. 27 Aug. 2013 Rep. (D.E. 19-16) 1.

On 14 March 2014, Clayton prepared a report in which he presented the schedule impacts and challenges for the overall project. 14 Mar. 2014 Rep. (D.E. 19-2). The report indicates that 14 days of delay were attributable to Hendrickson. *Id.* at 8 (entry for "Mechanical"). The 14

3

March 2014 report attributes 254 total days of delay to Hendrickson and two other subcontractors, though it notes that the delay for some was concurrent and cannot be summed. *Id.* at 8. Clayton was also asked to prepare separate reports for each of the subcontractors, including Hendrickson, which asserted claims against Tyler. *See* 23 May 2014 Rep. Re: NorthPoint Building Sys./Cleveland Constr. (D.E. 19-24); 3 June 2014 Rep. Re: Hendrickson (D.E. 19-17); 8 July 2014 Rep. Re: JP Electric (D.E. 19-23). In the report prepared with respect to Hendrickson, Clayton assessed 56 days of delay attributable in whole or part to Hendrickson. 3 June 2014 Rep. Re: Hendrickson 1, 5. Twenty-eight days of delay were found to be concurrent with electrical, plumbing, and sprinkler rough-ins on the 5th floor, and 11 days of delay concurrent with electrical and plumbing rough-ins on the 4th floor. *Id.* at 5. He assessed 17 days of delay for commissioning and punch effort attributable to Hendrickson alone. *Id.* at 5.

Tyler itself was allocated only 162 days of liquidated damages delays by the Army Corps of Engineers for the Barracks. 28 Feb. 2014 Ltr. from Army Corps of Engs. (D.E. 19-18) 1 ¶ 1.j. At the daily rate of $1,341.04, the liquidated damages for those 162 days totaled $217,248.48. *Id.* at 1.

## II. CASE PROCEEDINGS

In its amended complaint, Hendrickson asserts a claim for breach of contract against Tyler. Am. Comp. (D.E. 4) ¶¶ 21-28. It also asserts claims against Tyler for prompt payment pursuant to the Federal Prompt Payment Act, 31 U.S.C. § 3905,[4] and the North Carolina Prompt Payment Act, N.C. Gen. Stat. § 22C-5. *Id.* ¶¶ 29-34. Finally, Hendrickson asserts a claim,

---

[4] Hendrickson contends in its reply memorandum (D.E. 22) that it is not attempting to assert a direct claim pursuant to the Federal Prompt Payment Act and acknowledges that its Miller Act claim would preclude it from doing so. Reply Mem. 4; *see also* Applicable Legal Standards § IV below. However, in its amended complaint, it appears that Hendrickson is in fact asserting such a claim. Am. Compl. ¶ 34 ("As a proximate result of any violation of this law by Tyler, Hendrickson is damaged and entitled to recovery of special interest pursuant to 31 U.S.C. § 3905 for all amounts received by Tyler but not paid to Hendrickson as required under the Federal Prompt Payment Act, and/or pursuant to Chapter 22C of the North Carolina General Statutes as required under the North Carolina Prompt Pay Act.").

4

naming both Tyler and Liberty Mutual, for recovery on the surety payment bond posted for the project pursuant to the Miller Act, 40 U.S.C. §§ 3131, *et seq*. *Id.* ¶¶ 35-43. Hendrickson claims damages of $34,456.00 as the balance due on the subcontract and $187,334.00 over and above the balance due on the subcontract for uncompensated impacts of the delays by Tyler or its other subcontractors for which Tyler is responsible. *Id.* ¶¶ 27, 28.

In its answer, Tyler denies the material allegations in Hendrickson's amended complaint and asserts various affirmative defenses. Ans. & Ctrclms. (D.E. 9) ¶ 1-38. Tyler also asserts a counterclaim alleging that Hendrickson breached the subcontract by not performing its scope of work in a timely and workmanlike manner. *Id.* §§ 44, 45. It seeks $42,617.10 in liquidated damages that had been assessed against it for the alleged breach and $10,423.50 in additional damages. *Id.* ¶ 48. Hendrickson filed a reply (D.E. 14) denying the material allegations of the counterclaim and asserting various affirmative defenses. In its answer (D.E. 11), Liberty Mutual denies the material allegations in Hendrickson's amended complaint and asserts various affirmative defenses.

Hendrickson timely filed its motion for summary judgment after the completion of discovery. By the motion, it seeks summary judgment awarding it all the relief it seeks on its claims and dismissing with prejudice Tyler's counterclaim. Hendrickson filed 31 exhibits (D.E. 19-1 to 19-31) and a memorandum (D.E. 20) in support of the motion. Defendants filed a joint memorandum in opposition (D.E. 21). Hendrickson filed a reply memorandum (D.E. 22) in response.

5

Case 5:14-cv-00778-JG   Document 23   Filed 09/30/16   Page 5 of 14

# APPLICABLE LEGAL STANDARDS

## I. STANDARDS FOR SUMMARY JUDGMENT

A motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In analyzing whether there is a genuine issue of material fact, all facts and inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Design Resources, Inc. v. Leather Industries of America*, 789 F.3d 495, 500 (4th Cir. 2015); *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 958 (4th Cir. 1996).

The burden is on the moving party to establish the absence of genuine issues of material fact. *Celotex*, 477 U.S. at 323. If the movant meets its burden, then the nonmoving party must provide the court with specific facts demonstrating a genuine issue for trial in order to survive summary judgment. *Id.* at 323. The nonmoving party is not permitted to rest on conclusory allegations or denials, and a "mere scintilla of evidence" is not sufficient to defeat a summary judgment motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

Rule 56 directs that a "party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). "The summary judgment inquiry thus scrutinizes the

plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993).

## II. CONTRACT INTERPRETATION AND BREACH

The subcontract provides that disputes arising thereunder

> shall be determined in accordance with the federal law of government contracts including decisions enunciated by federal judicial bodies, boards of contract appeal, and quasi-judicial agencies of the federal government. To the extent that the federal law of government contracts is not dispositive, the laws of the state in which the Work is to be primarily performed shall apply.

Subcontract ¶ 12.1. Such a choice of law provision is enforceable. *See Movement Mortg., LLC v. Ward*, No. 3:14–cv–23–RJC–DCK, 2014 WL 880748, at *3 (W.D.N.C. 6 Mar. 2014) ("In fact, each agreement expressly provides that North Carolina law governs its terms. Where the parties to a contract have agreed that a given jurisdiction's substantive law will govern the interpretation of the contract, then a North Carolina court will give effect to that provision.").

Principles of contract law under federal law and North Carolina law are in accord. *In re Conner Corp. v. Butler*, 127 B.R. 775, 778 n.2 (E.D.N.C. 1991) (noting the lack of conflict between North Carolina contract law and federal contract law). Therefore, cases arising under or applying North Carolina law are instructive in interpreting the subcontract.[5]

It is well settled that "'when the language of a contract is clear and unambiguous, the court must interpret the contract as written.'" *Interstate Narrow Fabrics, Inc. v. Century USA, Inc.*, 218 F.R.D. 455, 462 (M.D.N.C. 2003) (quoting *Corbin v. Langdon*, 23 N.C. App. 21, 25, 208 S.E.2d 251, 254 (1974)). Moreover, when the contract language is "'plain and unambiguous on its face,'" the contract can be interpreted as a matter of law. *Id.* (quoting *Taha v. Thompson*,

---

[5] Although the parties do not address the choice of law provision in their briefing, the court has not identified any conflicts between the two bodies of law pertinent to the motion.

120 N.C. App. 697, 701, 463 S.E.2d 553, 556 (1995)). In such cases, summary judgment is appropriate because "a clear and unambiguous agreement poses no genuine issue of material fact." *Id.* (citing *Corbin*, 23 N.C. App. at 25, 208 S.E.2d at 255).

To establish a claim for breach of contract under federal or North Carolina law, the plaintiff must establish that: (1) a valid contract existed between the parties; (2) the defendant breached the terms of that contract; and (3) the plaintiff was damaged thereby. *See Sirsi Corp. v. Craven-Pamlico-Carteret Reg'l Library Sys.*, 815 F. Supp. 2d 931, 933 (E.D.N.C. 2011) (citing *Claggett v. Wake Forest Univ.*, 126 N.C. App. 602, 608, 486 S.E. 2d 443, 446 (1997)); *Red Lake Band of Chippewa Indians v. U.S. Dep't of Interior*, 624 F. Supp. 2d 1, 12 (2009) ("[A]s to the elements of a breach of contract claim under federal law, 'a party must allege and establish: (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by the breach.'" (quoting *Pryor v. United States*, 85 Fed. Cl. 97, 104 (Fed. Cl. 2009)).

### III. MILLER ACT

Under the Miller Act, a contractor is required to furnish to the government (1) a performance bond for the protection of the government and (2) a payment bond for the protection of "all persons supplying labor and material in carrying out the work provided for in the contract," including subcontractors. 40 U.S.C. § 3131(b); *United States ex rel. Sherman v. Carter*, 353 U.S. 210, 217 (1957) ("The essence of [the Miller Act's] policy is to provide a surety who, by force of the Act, must make good the obligations of a defaulting contractor to his suppliers of labor and material."). "Because the subcontractor's ordinary fail-safe—the mechanic's lien—is inapposite when the subject property is owned by the federal government, the Miller Act provides an alternative, creating a 'cause of action in favor of all furnishers of

labor and materials to recover the amount due under the contract.'" *Hartford Accident & Indem. Co.*, 2016 WL 852730, at *4 (quoting *HPS Mech., Inc. v. JMR Constr. Corp.*, No. 11–cv–02600–JCS, 2014 WL 3845176, at *12 (N.D. Cal. 1 Aug. 2014)).

The Miller Act provides that "[e]very person that has furnished labor or material in carrying out work provided for in a contract for which a payment bond is furnished under section 3131 of this title and that has not been paid in full within 90 days after the day on which the person did or performed the last of the labor or furnished or supplied the material for which the claim is made may bring a civil action on the payment bond for the amount unpaid at the time the civil action is brought and may prosecute the action to final execution and judgment for the amount due." 40 U.S.C. § 3133(b)(1). "To state a valid Miller Act claim, a plaintiff must sufficiently allege that: (1) it supplied labor or materials 'in carrying out work provided for in a contract for which a payment bond [was] furnished under section 3131;' (2) it has not been paid; (3) it had a good faith belief that the labor or materials supplied were intended for the specified work; and (4) the jurisdictional requisites of the Miller Act have been met."[6] *United States ex rel. ProBuild Co., LLC v. Scarborough*, No. 2:11CV451, 2012 WL 1571500, at *5 (E.D. Va. 11 Apr. 2012) (quoting 40 U.S.C. § 3133(b)(1)), *rep. & recomm. adopted*, 2012 WL 1571493 (3 May 2012).

## IV. FEDERAL AND NORTH CAROLINA PROMPT PAYMENT ACTS

The Federal Prompt Payment Act, 31 U.S.C. § 3905, prescribes the requirements for contracts awarded by federal agencies:

> Each construction contract awarded by an agency shall include a clause that requires the prime contractor to include in each subcontract . . . (1) a payment

---

[6] The jurisdictional prerequisite for a party with a direct contractual relationship with the party furnishing the payment bond is filing suit within a year after "the day on which the last of the labor was performed or material was supplied." 40 U.S.C. § 3133(b)(4).

> clause which obligates the prime contractor to pay the subcontractor for satisfactory performance under its subcontract within 7 days out of such amounts as are paid to the prime contractor . . . and (2) an interest penalty clause which obligates the prime contractor to pay to the subcontractor an interest penalty on amounts due in the case of each payment not made in accordance with the payment clause . . . .

31 U.S.C. § 3905(b). Though these requirements outline benefits provided to subcontractors working on government projects, "courts have consistently held that the [Federal Prompt Payment Act] 'does not confer a private right of action upon subcontractors.'" *United States v. Hartford Accident & Indem. Co.*, ___ F. Supp. 3d ___, No. JKB-14-2148, 2016 WL 852730, at *7 n.19 (D. Md. 4 Mar. 2016) (quoting *United States ex rel. Drill Tech Drilling & Shoring, Inc. v. Lexon Ins. Co.*, No. SACV 14–01573 DDP (ANx), 2015 WL 3498614, at *3 (C.D. Cal. 3 June 2015) (collecting cases)); *United States ex rel. Virginia Beach Mech. Servs., Inc. v. SAMCO Const. Co.*, 39 F. Supp. 2d 661, 678 (E.D. Va. 1999) ("[B]ecause neither the plain language of [the Federal Prompt Payment Act] nor its legislative history indicates that the statute creates a cause of action for private litigants involved in a Miller Act dispute, [plaintiff] could not recover damages."); *see also United States ex rel. King Mountain Gravel, LLC v. RB Constructors, LLC*, 556 F. Supp. 2d 1250, 1253 (D. Colo. 2008) ("A comparison of the two statutes indicates that a subcontractor bringing a claim under the Miller Act—a claim that must be brought in the name of the United States—cannot also bring a claim under the Prompt Payment Act because such a claim cannot be brought in the name of the United States."). While the Federal Prompt Payment Act does not provide a private right of action for plaintiffs proceeding pursuant to the Miller Act, it does not limit the rights of a subcontractor to proceed pursuant to state law remedies. *See* 31 U.S.C. § 3905(j) ("Except as provided in subsection (i) of this section [where the United States is party], this section shall not limit or impair any contractual, administrative, or judicial remedies otherwise available to a contractor or a subcontractor in the event of a dispute involving late

payment or nonpayment by a prime contractor or deficient subcontract performance or nonperformance by a subcontractor.").

The state law counterpart, the North Carolina Prompt Payment Act, codified at N.C. Gen. Stat. §§ 22C–1 *et seq.*, provides:

> Should any periodic or final payment to a subcontractor be delayed by more than seven days after receipt of periodic or final payment by the contractor or subcontractor, the contractor or subcontractor shall pay his subcontractor interest, beginning on the eighth day, at the rate of one percent (1%) per month or a fraction thereof on such unpaid balance as may be due.

N.C. Gen. Stat. § 22C-5. The North Carolina Prompt Payment Act also permits a general contractor's withholding of payment to its subcontractors on the following terms:

> Nothing in this Chapter shall prevent the contractor, at the time of application and certification to the owner, from withholding such application and certification to the owner for payment to the subcontractor for: unsatisfactory job progress; defective construction not remedied; disputed work; third party claims filed or reasonable evidence that claim will be filed; failure of subcontractor to make timely payments for labor, equipment, and materials; damage to contractor or another subcontractor; reasonable evidence that subcontract cannot be completed for the unpaid balance of the subcontract sum; or a reasonable amount for retainage not to exceed the initial percentage retained by the owner.

N.C. Gen. Stat. § 22C-4.

## ANALYSIS

All of Hendrickson's claims require the existence of a valid contract. The validity of the subcontract between Hendrickson and Tyler is undisputed.

All of Hendrickson's claims, other than the portion of its contract claim seeking damages above and beyond those due under the subcontract, also require a showing that Tyler has not paid Hendrickson all that it is owed under the subcontract. On this issue, the record shows that there are numerous issues of material fact that preclude summary judgment.

The gravamen of Hendrickson's allegation that it has been underpaid is that Tyler is wrongfully attributing to it delays in completion of the Barracks. Hendrickson acknowledges in its memorandum, as it must, that the subcontract permits offsets resulting from delay and that this project was rife with delays. But the amount of delay, if any, that can be attributable to Hendrickson is not conclusively established in the record before the court.

The multiple reports prepared by Clayton, the only evidence before the court that assigns responsibility for delay, suggest that at least some delay is attributable to Hendrickson. At the same time, Hendrickson has appropriately highlighted the inconsistencies and lack of specificity in the Clayton reports, and raised questions as to the qualification of Clayton to offer the opinions reflected in the reports. Hendrickson's criticisms, though, are not a substitute for the showing, it had the burden of making, that there are no disputes of material fact that no delays cognizable under the offset provisions of the subcontract are attributable to Hendrickson.

Hendrickson argues that Tyler concedes in its joint memorandum with Liberty Mutual that it is liable to Hendrickson for at least $5,257.94 under the subcontract. The purported concession reads: "The daily rate of $1,341.04 charged by the Corps against Tyler, times 14 days equals $18,774.56, plus $10,423.50 in other damages that Tyler gave notice to Hendrickson, brings the total to $29,198.06, leaving a difference of $5,257.94 potentially owed to Hendrickson." Defs.' Mem. 4. But even if this statement is deemed a concession, a concession by counsel in a brief does not amount to evidence sufficient to support or oppose a summary judgment motion. *See Adjabeng v. GlaxoSmithKline, LLC*, No. 1:12–CV–568, 2014 WL 459851, at *3 (M.D.N.C. 5 Feb. 2014) (collecting cases holding that counsel's unsworn statements in briefs are not evidence); *Harrelson v. Stride Rite Children's Group, LLC*, No. 4:10–02048–JMC, 2012 WL 694033, at *2 (D.S.C. 5 Mar. 2012) ("Legal memoranda, in the

12

Case 5:14-cv-00778-JG   Document 23   Filed 09/30/16   Page 12 of 14

summary judgment context, are not evidence and do not support a finding that there is no genuine issue for trial." (citing *Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1358 (4th Cir. 1995) (counsel's statements are not evidence)). It is not apparent, in any event, that this statement was intended to be a concession of liability. Immediately after it, defendants' memorandum states, "Whether money is actually due and owing or rightfully withheld by Tyler is a question of fact and precludes summary judgment on a breach of contract action." Defs.' Mem. 4.

As to Hendrickson's contract claim for damages above and beyond the balance purportedly due on the subcontract, Hendrickson has failed to adduce evidence in support of this claim or, if it deems evidence it submitted to support this claim, it has failed to relate the evidence to this claim. In any event, Hendrickson has failed to demonstrate that there is no genuine issue of material fact as to this claim and that it is entitled to judgment on it as a matter of law.

Because of the presence of genuine issues of material fact on the extent to which, if any, Hendrickson is responsible for delays justifying offsets against any balance otherwise due it on the subcontract, Hendrickson has not shown that it is entitled to summary judgment dismissing the portion of Tyler's counterclaim seeking such offsets. Hendrickson has also failed to show that there are no disputes of material fact that its performance under the subcontract did not otherwise breach the subcontract and cause Tyler damages, and that it is entitled to judgment dismissing this portion of the counterclaim.

Hendrickson has thus failed to show with respect to any of its claims or Tyler's counterclaim that there are no genuine disputes of material fact and that it is entitled to judgment

as a matter of law. Hendrickson's motion for summary judgment must therefore be denied in its entirety.

The denial of Hendrickson's motion warrants a formal effort to explore settlement opportunities in this case. The court accordingly will direct the parties to participate in a court-hosted settlement conference. By separate order, the court will schedule the trial and final pretrial proceedings.

## **CONCLUSION**

For the foregoing reasons, IT IS ORDERED as follows:

1. Hendrickson's motion for summary judgment (D.E. 19) is DENIED.

2. The parties shall participate in a court-hosted settlement conference before United States Magistrate Judge Robert B. Jones, Jr. by 10 November 2016. Judge Jones will schedule the conference and set such other terms for it as he deems appropriate.

SO ORDERED, this 30th day of September 2016.

_____
James E. Gates
United States Magistrate Judge